# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-7995

DAVID W. BOEHRINGER, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 29, 2026[1]                                      Decided July 15, 2026)

*Amy F. Odom*, of Providence, Rhode Island, for the appellant.

*David B. LeBlanc*, with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Mohammad R. Ricks*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before ALLEN, *Chief Judge*, PIETSCH, TOTH, FALVEY, LAURER, and JAQUITH, *Judges*, and BARTLEY,[2] *Senior Judge*.[3]

LAURER, *Judge*, filed the opinion of the Court. BARTLEY, *Senior Judge*, filed a dissenting opinion, which TOTH and JAQUITH, *Judges*, joined.

LAURER, *Judge*: Context matters. And it especially matters when interpreting provisions under the Veterans Appeals Improvement and Modernization Act of 2017 (AMA).[4] The AMA substantially changed VA's administrative appeals process, creating entirely new procedural pathways and tools that weren't available under the "legacy" review system. The AMA is complex. It has a lot of moving parts, many of which have been the subject of decisions before this Court and the U.S. Court of Appeals for the Federal Circuit. To add to that complexity, the AMA didn't

---

[1] On June 17, 2025, the Court heard oral argument before a three-member panel of the Court at the Disabled American Veterans (DAV) National Headquarters in Erlanger, Kentucky. *Boehringer v. Collins*, U.S. Vet. App. 23-7995 (argued June 17, 2025), https://www.youtube.com/watch?v=3ZL2yix-yuA (last visited June 5, 2026). We thank DAV for their hospitality during our visit. On April 29, 2026, we heard oral argument again before an en banc panel of the Court. Oral Argument (OA), *Boehringer v. Collins*, U.S. Vet. App. 23-7995 (argued April 29, 2026), https://www.youtube.com/watch?v=tTbjCS0qHd8 (last visited June 5, 2026).

[2] Judge Bartley is a Senior Judge acting in recall status. *In re Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 05-26 (June 25, 2026). Judge Bartley was assigned this panel case before she became a Senior Judge.

[3] Judge Meredith recused herself from this matter.

[4] Pub. L. No. 115-55, 131 Stat. 1105 (codified as amended in scattered sections of 38 U.S.C.).

jettison the legacy system. So when interpreting an AMA provision, we take particular care to consider just how it works within the context of Congress's dual-system framework and within the AMA as a whole. This approach doesn't disregard a provision's plain meaning—it informs it.

Think of it this way. When it comes to the AMA, statutory interpretation without context is like looking at a Van Gogh painting through a soda straw. A single brushstroke viewed in isolation is just that: a dab of blue or yellow susceptible to many interpretations. Only by stepping back can the patron distinguish the full picture, and *The Starry Night* is clear. That's how we interpret 38 U.S.C. § 5110(a)(2)(D), the provision at issue. We consider both the text *and* the context to analyze its plain meaning. And in doing so, we'll see clearly how it fits into Congress's AMA design.

In this appeal, U.S. Army veteran David W. Boehringer, through counsel, challenges an October 27, 2023, Board of Veterans' Appeals (Board) decision issued under the AMA[5] that dismissed an appeal for an effective date before February 25, 2016, for a total disability rating based on individual unemployability (TDIU). The dispute centers on appellant's April 2022 claim, which he filed on a supplemental claim form within a year of an October 2021 Board decision, issued under the pre-AMA legacy review system, denying an earlier effective date for TDIU. Appellant argues that section 5110(a)(2)(D) allows a claimant to continuously pursue an effective date claim by filing a supplemental claim within 1 year of *any* Board decision, regardless of whether it's a legacy or AMA decision. As explained below, we hold that a claimant may not use a supplemental claim to continuously pursue an earlier effective date claim that was finally decided by the Board under the legacy system. Continuous pursuit applies only to AMA claim streams. And here, appellant didn't opt in to the AMA, and his TDIU effective date claim became final under legacy. So he couldn't continue his legacy appeal of his TDIU effective date through an AMA supplemental claim.

After we provide some background and recount the parties' arguments, we'll consider the text of section 5110(a)(2). Next, we'll zoom out by looking at how the legacy and modernized review systems interact. Then we'll consider the standard for determining which system applies and the specific means Congress provided for a legacy claimant to opt in to the AMA. Finally,

---

[5] Record (R.) at 5-8. The Board processed appellant's Board appeal under the modernized review system. Unless a claimant elects into the modernized system, claims decided before the AMA's effective date—February 19, 2019—are generally referred to as legacy claims. *See* 38 C.F.R. § 3.2400(b) (2026); *see also* 38 C.F.R. § 19.2 (2026).

we'll address when continuous pursuit is available through a supplemental claim before turning to how the law applies to the facts of this appeal.

## I. BACKGROUND

In August 2012, VA granted appellant a 50% rating for posttraumatic stress disorder (PTSD), effective January 2012, the date VA received appellant's claim.[6] While continuing to pursue a higher PTSD rating, appellant claimed TDIU due to PTSD in November 2013.[7] As relevant here, in June 2014, the VA agency of original jurisdiction (AOJ) denied TDIU, and appellant appealed that decision to the Board a few months later.[8] In May 2018, the Board remanded TDIU for further development as inextricably intertwined with appellant's PTSD,[9] eventually leading to a December 2020 Supplemental Statement of the Case (SSOC) and a January 2021 SSOC denying TDIU before June 25, 2019.[10] Both SSOCs informed appellant that he could continue his appeal in the legacy system or opt in to the AMA.[11] He didn't opt in. Following an April 2021 Board remand,[12] a June 2021 AOJ decision granted TDIU, effective February 25, 2016, which is the date VA assigned a 70% rating for PTSD.[13] In July 2021, the AOJ issued an SSOC denying an earlier effective date for TDIU and providing appellant another opportunity to opt in to the AMA.[14] He didn't opt in at this point either.

---

[6] R. at 6096-97.

[7] R. at 6007; *see also* R. at 5992-94.

[8] R. at 5944-46, 5931-33.

[9] R. at 5125-28.

[10] R. at 3820-27, 3529-62. Because the AOJ had granted a 100% rating for PTSD, effective June 25, 2019, the AOJ only considered entitlement to TDIU before that date.

[11] R. at 3529, 3820, 3829-30.

[12] R. at 3369-86; *see also* 38 C.F.R. § 4.16(a) (2026) (providing that TDIU may be assigned if an appellant has a single disability rated 60% or more, or if there are 2 or more disabilities, that 1 disability is rated 40% or more and any additional disability warrants a combined rating of 70% or more).

[13] R. at 3348-50.

[14] R. at 2781-808.

3

In October 2021, the Board denied an earlier TDIU effective date before February 25, 2016.[15] Appellant didn't appeal the Board's decision to the Court. Up until this point, the parties agree that appellant's claim stream was under the legacy system.[16]

In April 2022, appellant filed a claim for an earlier effective date for TDIU on a supplemental claim form (VA Form 20-0995, Decision Review Request: Supplemental Claim), identifying the October 2021 Board decision as the decision for review.[17] In August 2022, the AOJ considered the merits of his effective date argument and denied an earlier effective date.[18] Appellant then appealed the AOJ decision to the Board.[19]

In the October 2023 decision on appeal, the Board found that appellant's April 2022 claim amounted to a freestanding claim for an earlier effective date because the October 2021 Board decision was final.[20] Relying on *Rudd v. Nicholson*,[21] the Board explained that once an effective date determination becomes final, a claimant's only option to challenge the final decision is revision based on clear and unmistakable error (CUE). The Board noted that continuous pursuit through a supplemental claim applies only to decisions issued under the AMA. Because the October 2021 Board decision was under the legacy system, the October 2023 Board determined that continuous pursuit "was and is not available."[22] The Board dismissed the appeal, and this appeal followed.

## II. PARTIES' ARGUMENTS

Appellant invokes the continuous pursuit rule to argue that his April 2022 claim isn't a freestanding claim for an earlier effective date. He asserts that the continuous pursuit rule applies

---

[15] R. at 2756-69.

[16] *Compare* Appellant's Brief (Br.) at 3, 8, *with* Secretary's Br. at 5, 7. In his reply brief, appellant agreed that the October 2021 Board decision became final, but he qualified it as final "for *Legacy* purposes." Appellant's Reply Br. at 6 ("[T]he Veteran's entitlement to TDIU prior to February 2016 was . . . finally adjudicated for *Legacy* purposes . . . ."). But at oral argument before the en banc Court, appellant's counsel contended that the October 2021 Board decision *didn't* become final because appellant filed a supplemental claim within a year. OA at 23:11-23:15. *See also* Appellant's Reply Br. at 6 ("[T]he [TDIU] claim was *not* 'finally adjudicated' for AMA purposes.").

[17] R. at 2738-41.

[18] R. at 2030-32.

[19] R. at 1990.

[20] R. at 7.

[21] *Rudd v. Nicholson*, 20 Vet.App. 296 (2006).

[22] R. at 8.

4

because he filed a supplemental claim within 1 year of *a* Board decision under section 5110(a)(2)(D), and he got an initial decision on that claim in August 2022, after the AMA's effective date of February 19, 2019. He says the question is simple: "[D]id VA issue notice of a decision under section 5104 on the [supplemental] claim after February 19, 2019? . . . If so, the AMA amendments—including the continuous pursuit rules—apply."[23]

Appellant adds that "the AMA rules apply to 'all . . . requests for reopening of finally adjudicated claims . . . for which VA issues notice of an initial decision,' on or after February 19, 2019."[24] Appellant views the "initial decision" in this case as the August 2022 AOJ decision that addressed his April 2022 claim.[25] And because he filed that claim within a year of *a* Board decision (the October 2021 legacy decision)—and received a decision on that claim—he contends that his claim stream is subject to the AMA.

The Secretary argues that continuous pursuit under section 5110(a)(2) is an AMA rule that doesn't apply to legacy decisions. He asserts that once an effective date decision issued by the Board becomes final under legacy, readjudication is warranted only upon "'assertion of [CUE], an order from the Chairman granting reconsideration of a Board decision, or the Board's sua sponte correction of obvious error.'"[26] The Secretary contends that appellant chose to keep his claim in the legacy system despite multiple opportunities to opt in to the AMA. And the Secretary notes that appellant didn't pursue any of the legacy options for review of the October 2021 Board decision. The Secretary defends the Board's conclusion that appellant's April 2022 claim amounted to an impermissible freestanding earlier effective date claim.

In reply, appellant acknowledges that his TDIU effective date claim was "finally adjudicated for *Legacy* purposes" in the October 2021 Board decision.[27] But he argues that his claim "became an AMA claim when the AOJ issued a decision" in August 2022—the initial decision on his April 2022 claim that triggered the AMA.[28] So he says his claim wasn't finally

---

[23] Appellant's Br. at 6.

[24] Appellant's Br. at 7 (quoting 38 C.F.R. § 19.2(b) (2023)).

[25] Appellant's Br. at 7.

[26] Secretary's Br. at 9  (quoting *Calhoun v. McDonough*, 37 Vet.App. 96, 100 (2024)).

[27] Appellant's Reply Br. at 6.

[28] Appellant's Reply Br. at 6.

adjudicated "for AMA purposes," and continuous pursuit was available.[29] Appellant contends that nothing in the AMA bars him from continuously pursuing a claim decided by the Board under the legacy system so long as there's an initial decision on or after February 19, 2019.

### III. ANALYSIS

The meaning of a statute is a legal question that the Court reviews de novo.[30] To start, we first look at the language of the statutory provision, "giving the words used their ordinary meaning."[31] But we don't stop there because context "inform[s] any statutory provision's plain meaning."[32] So we also consider "'the statutory scheme as a whole, the specific context in which [a] word or provision at issue is used, and the broader context of the statute as a whole'" to determine a provision's plain meaning.[33] But before we jump into the text, let's get a bird's-eye view of how the legacy and AMA review systems operate concurrently.

A. Two Distinct Review Systems

Congress overhauled VA's internal appeals system with the AMA.[34] It created new procedural tools and processes in the administrative adjudication process—like supplemental claims and higher level review—and established a novel framework for how effective dates

---

[29] Appellant's Reply Br. at 6.

[30] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018); *Casey v. Wilkie*, 31 Vet.App. 260, 265 (2019) ("Statutory interpretation is a pure question of law that the Court reviews de novo.").

[31] *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

[32] *Casey*, 31 Vet.App. at 265; *see, e.g., Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 413 (2012) ("The meaning of the phrase turns on its context."); *Johnson v. United States*, 559 U.S. 133, 134 (2010) ("Ultimately, context determines meaning."); *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context."), *superseded by statute on other grounds*, Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, Pub. L. No. 104-204, § 422(a), 110 Stat. 2874, 2926–27 (1996), *as recognized in Ollis v. Shulkin*, 857 F.3d 1338, 1342 (Fed. Cir. 2017); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

[33] *Casey*, 31 Vet.App. at 265 (quoting *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010), *dismissed*, 457 F. App'x 921 (Fed. Cir. 2011) (order)); *see also Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure."); *Arellano v. McDonough*, 598 U.S. 1, 8 (2023) (examining both the text and the structure of the statute).

[34] *Mattox v. McDonough*, 34 Vet.App. 61, 63 (2021) ("The AMA is a sweeping piece of legislation that extensively overhauls the administrative appeals process concerning VA benefits decisions."), *aff'd*, 56 F.4th 1369 (Fed. Cir. 2023).

operate within that system.[35] By all means, the AMA introduced "'a whole new world'" for how VA adjudicates claims.[36] But despite these sweeping changes, Congress didn't repeal the legacy system. Instead, Congress intended for the legacy and AMA systems to operate concurrently, where some appeals would be processed under legacy and others under the AMA.[37] If Congress wanted to, it could've provided for overlapping procedures between the two review systems. But it didn't. The systems are distinct, each with specific rules and options for pursuing claims.[38] That's significant. This dual-system design was intentional, meaning a claim stream is subject only to one system at a time.[39]

To determine which review system applies, "we ask whether the initial decision that led to an administrative appeal was issued on or after February 19, 2019."[40] If the initial decision was issued on or after that date, the appeal falls within the AMA. If the initial decision was issued before that date, the appeal falls within the legacy system. Congress also provided that in specific, limited circumstances, a legacy claimant may opt in to the AMA. Shortly we'll dive deeper into opt-in rules, what we view as appellant's "initial decision," and how we view his later claims. But for now, we keep it simple to focus on the rules Congress gave. Considering this dual-system framework, how does section 5110(a)(2) fit in? Let's turn there now.

---

[35] *See generally* Pub. L. No. 115-55, sec. 2, 131 Stat. 1105, 1105.

[36] *Andrews v. McDonough*, 34 Vet.App. 151, 156 (2021) (quoting NAT'L VETERANS LEGAL SERVS. PROGRAM, VETERANS BENEFITS MANUAL § 12.1.1 (2020-2021 ed.)). We've discussed the breadth of these changes before and need not revisit them all now. *See, e.g.*, *Calhoun*, 37 Vet.App. at 100-01; *Mattox*, 34 Vet.App. at 68; *see also Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.* (*MVA*), 7 F.4th 1110, 1118-19 (Fed. Cir. 2021).

[37] *Mattox*, 34 Vet.App. at 68; *id.* at 63 ("Congress did not eliminate the administrative appeals structure existing at the time Congress passed the AMA, leaving the earlier process in place as the 'legacy' system.").

[38] *See, e.g.*, *Cooper v. McDonough*, 38 Vet.App. 1, 5-6 (2024) (per curiam order) (comparing the vastly different procedural routes under the legacy and AMA systems), *appeal docketed sub nom. Cooper v. Collins*, No. 25-1166 (Fed. Cir. Nov. 12, 2024).

[39] A claimant might have claims for the same condition pending in separate claims streams, thus under both the legacy and AMA systems at the same time. VA's grant of a claim in one claim stream doesn't always resolve the claim pending in the other claim stream. *See Johnson v. Collins*, 38 Vet.App. 151, 153-54 (2025) (holding that VA's grant of service connection in a second claim stream didn't moot a claim for the same conditions under a different service connection theory in the initial claim stream).

[40] *Mattox*, 34 Vet.App. at 69 (examining 38 C.F.R. § 3.2400 (2020)); *see also Held v. McDonough*, 37 Vet.App. 28, 38 (2023) (distinguishing an "initial decision" that triggers application of the AMA under 38 C.F.R. § 19.2 from an "initial decision . . . with respect to the case" that triggers representation fees under 38 U.S.C. § 5904(c)(1)).

B. The Text of Section 5110(a)(2)

The key disagreement between the parties is whether section 5110(a)(2), as amended by the AMA,[41] allows a claimant to continuously pursue an earlier effective date determination that was finally decided in a legacy Board decision. Under the legacy system, once an effective date determination became final, it couldn't be readjudicated unless one of the limited exceptions to finality applied.[42] In other words, a claimant couldn't pursue a claim to reopen a finally decided effective date determination.[43] But the AMA amended section 5110 and added new provisions. So we start with the text of the provision at issue. Section 5110(a)(2) states as follows:

> For purposes of determining the effective date of an award under this section, the date of application shall be considered the date of the filing of the initial application for a benefit if the claim is continuously pursued by filing any of the following, either alone or in succession:
>
> . . .
>
> (D) A supplemental claim under 5108 of this title on or before the date that is one year after the date on which the Board of Veterans' Appeals issues a decision.[44]

Let's break this down. Section 5110(a)(2) gives a claimant another avenue to challenge a Board effective date determination through a "supplemental claim," something that wasn't available under the legacy system. By filing a supplemental claim within a year of a Board decision,[45] a claimant can forestall the finality of the decision and continuously pursue his effective date claim.[46] If a claimant prevails on the merits, he could be awarded an effective date stretching back to the date he first filed his "initial application" for benefits.

Notice that this provision doesn't differentiate between legacy and AMA Board decisions. Instead, it says a supplemental claim must be filed within a year of the date on which the Board issues "a" decision. This provision also doesn't define what "initial application" means. But our inquiry continues because we don't read statutory provisions in a vacuum. Context is an essential

---

[41] *See* Pub. L. No. 115-55, sec. 2(*l*), 131 Stat. at 1110.

[42] *Rudd*, 20 Vet.App. at 299-300; *see also Calhoun*, 37 Vet.App. at 100 (noting the exceptions to finality: revision based on clear and unmistakable error, Board reconsideration, or the Board's sua sponte correction of error).

[43] *Rudd*, 20 Vet.App. at 299-300 (describing such a claim as a "freestanding claim for earlier effective dates" that would "vitiate[] the rule of finality").

[44] 38 U.S.C. § 5110(a)(2).

[45] A supplemental claim must also provide "new and relevant evidence." 38 U.S.C. § 5108(a).

[46] *See Calhoun*, 37 Vet.App. at 102.

element of statutory interpretation,[47] and a proper perspective begins with how section 5110(a)(2) fits within the changes brought by the AMA and the statutory scheme as a whole. We start by considering what opting in to the AMA looks like. As explained below, Congress (and the Secretary) afforded specific, limited means for a legacy claimant to opt in to the AMA.

### C. Opting in to the AMA

Congress provided that a legacy claimant may elect to participate in the AMA system "upon the issuance to a claimant of a[n SOC] or [SSOC] occurring on or after [February 19, 2019]."[48] Congress also explicitly gave the Secretary discretion to manage a claimant's election between review systems.[49] And the Secretary specified that a claimant could opt in to the modernized review system either (1) by participating in the Rapid Appeals Modernization Program, or (2) after receiving an SOC or SSOC.[50]

We interpret statutes with the understanding that Congress doesn't make significant policy changes cryptically.[51] Allowing a legacy claimant to opt in to a different administrative appeal system was a significant policy change brought by the AMA. And allowing a legacy claimant to opt in through a supplemental claim would also be significant, effectively overriding legacy finality rules.[52] A supplemental claim also isn't some "other" option to switch systems in addition to opting in. In fact, using a supplemental claim to enter the AMA would essentially act as an unintended opt-in loophole. And for all practical purposes, the supplemental claim would be another opt-in mechanism. If this was Congress's intention, we would expect it to be clear. Congress knew how to identify which review system applies to a claim and when a legacy claimant

---

[47] *See Van Dermark v. McDonough*, 57 F.4th 1374, 1381 (Fed. Cir. 2023) ("Context always matters.").

[48] Pub. L. No. 115-55, sec. 2(x)(5), 131 Stat. at 1115 ("Treatment of Legacy Claims").

[49] Pub. L. No. 115-55, sec. 6(3), 131 Stat. at 1127 (noting that a claimant can opt in to the AMA under "such other mechanism as the Secretary may prescribe").

[50] 38 C.F.R. § 3.2400(c) (2026).

[51] *See Jackson v. McDonough*, 37 Vet.App. 277, 293 (2024) (pulling this general premise from *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.")), *aff'd sub nom. Jackson v. Collins*, ___ F.4th ___, No. 2024-2135, 2026 WL 1838920 (Fed. Cir. June 26, 2026); *see also Keene Corp. v. United States*, 508 U.S. 200, 209 (1993) ("[W]e do not presume that the revision worked a change in the underlying substantive law 'unless an intent to make such [a] chang[e] is clearly expressed.'" (quoting *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227 (1957))).

[52] *See infra* section III.E.

9

could switch systems.[53] And Congress was specific: A claimant may opt in only after an SOC or SSOC, plus whatever avenue the Secretary prescribed.[54] Congress *never* said that a legacy claimant can use a supplemental claim to access the AMA. Nor did the Secretary add such an avenue in the regulations implementing the AMA. And we assume that Congress didn't intend to provide other implicit opt-in methods in addition to the ones it expressly created or authorized VA to create.[55]

To add another way for a legacy claimant to enter the AMA (like a supplemental claim), we'd have to conclude that Congress was detailed and clear about opt-in procedures yet left us a breadcrumb in section 5110(a)(2). That's inconsistent with Congress's intentional design for how a claimant can opt in to the AMA. Congress didn't bury a revolutionary change to legacy finality rules inside section 5110(a)(2)(D), and a supplemental claim isn't a hidden back door into the AMA. We decline to read implicit opt-in mechanisms into the statute that Congress didn't provide for.

But if a supplemental claim isn't another way to opt in to the AMA, then why did Congress draft section 5110(a)(2)(D) so broadly? (Recall that the provision speaks of a supplemental claim filed within a year of "a" Board decision.) Why doesn't section 5110(a)(2)(D) specify supplemental claims within a year of an *AMA* Board decision? Context again clarifies a provision that would be susceptible to multiple interpretations when viewed in isolation. As we'll explain, section 5110(a)(2) presupposes that a claim stream is *already* in the AMA.

### D. The Applicability of a Supplemental Claim

Section 5110(a)(2) reflects one of the most significant AMA features codified by Congress: continuous pursuit. Nearly every provision under section 5110(a)(2)—all except (C)[56]—was created by the AMA, meaning that section 5110(a)(2) lays out the rules for the *new* procedural options Congress afforded in the AMA.

---

[53] *See*, *e.g.*, Pub. L. No. 115-55, sec. 2(x)(3), (5), 131 Stat. at 1115; sec. 6(3), 131 Stat. at 1127.

[54] Recall that the Secretary also provided that a legacy claimant my opt in to the AMA by participating in the Rapid Appeals Modernization Program. 38 C.F.R. § 3.2400(c)(1) (2026).

[55] *See generally Casey v. Wilkie*, 31 Vet.App. 260, 268 (2019) (recounting a "well-known maxim of statutory construction: the expression of one thing implies the exclusion of others" (citing *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017)).

[56] As in legacy appeals, a claimant can also directly appeal an AOJ decision to the Board by filing a Notice of Disagreement. 38 U.S.C. § 5104C(a)(1)(C); *see also* § 5110(a)(2)(C).

Take the term "supplemental claim" discussed in section 5110(a)(2)(B) and (D).[57] That term didn't exist in the legacy review system. Congress created the supplemental claim in the AMA as an innovative tool to enable continuous pursuit of a claim.[58] The AMA also defined the supplemental claim: It's a claim filed after a decision, with new and relevant evidence, as one of multiple procedural review lanes available under the AMA.[59] But this option was unavailable to legacy claimants because it didn't exist in the legacy review system.[60] Legacy claimants had "a single pathway" for review, and the only way to challenge a final unfavorable decision was through a claim to reopen or another narrow exception to finality like CUE.[61] So the supplemental claim is a *unique AMA feature* that works only in the modernized review system.

Ditto for "higher-level review," a term discussed in section 5110(a)(2)(A).[62] This didn't exist before the AMA.[63] It's unique to the AMA, designed by Congress as one of the review options for claimants whose claim streams are already subject to the AMA. A higher level review isn't an option for a legacy claimant who hasn't opted in to the AMA, just as a legacy claim to reopen isn't an option for an AMA claimant. The higher level review, like the supplemental claim, operates with the understanding that a veteran is already in the modernized review system. So when Congress referenced higher level review and supplemental claims in section 5110(a)(2), it didn't import new rules into an old system. The provision gives new procedures for effective date

---

[57] 38 U.S.C. § 5108 (providing that the Secretary must readjudicate a claim "[i]f new and relevant evidence is presented or secured with respect to a supplemental claim"); *Jackson*, 37 Vet.App. at 285 ("The AMA created the 'supplemental claim.'" (citing 38 U.S.C. § 101(36))).

[58] *See*, *e.g.*, Pub. L. No. 115-55, sec. 2(a), (h), (i), (k), 131 Stat. at 1105, 1108, 1109.

[59] 38 U.S.C. § 5104C(a), (b); § 5108(a); § 5110(a)(2)(B), (D), (E).

[60] *See MVA*, 7 F.4th at 1119 ("Central to the AMA's many reforms, claimants may now choose from three procedural lanes to obtain review of their claim within one year of the initial decision (in contrast to the legacy system's single pathway for appeal to the Board).").

[61] *See generally Calhoun*, 37 Vet.App. at 100 ; *see also MVA*, 7 F.4th at 1134 (recognizing that supplemental claims replaced legacy claims to reopen). *But see Calhoun*, 37 Vet.App. at 100 (noting that a legacy claimant may not seek to reopen a final effective date determination).

[62] 38 U.S.C. §§ 5104B, 5110(a)(2)(A).

[63] *See MVA*, 7 F.4th at 1119.

claims under the AMA.[64] So continuous pursuit isn't a feature that interchangeably plugs into both systems. It's a core design of only one: the modernized system.[65]

The application of section 5110(a)(2) is based on the premise above. Put clearly, section 5110(a)(2) applies to claim streams that are *already in the AMA*. A legacy claimant (one who hasn't opted in) can't continuously pursue an earlier effective date through a supplemental claim because—to state the obvious—his claim stream is under the legacy system. That claimant is bound by the procedural review options available under legacy.[66] The supplemental claim is a procedural option available only for AMA claimants.[67] So when section 5110(a)(2)(D) references "a" Board decision, we understand that to refer to AMA Board decisions that are in AMA claim streams. Section 5110(a)(2) makes sense only if we read it as an AMA-specific provision that operates independent of legacy procedures.

Any other result would be absurd.[68] Recall that we consider the date of "the initial decision that led to an administrative appeal" to determine which system applies.[69] If the decision is before February 19, 2019, then legacy applies; if the decision is on or after February 19, 2019, then the AMA applies. Also remember that section 5110(a)(2) provides that if the claim is continuously

---

[64] *See* 38 U.S.C. § 5110(a)(2) (referencing 38 U.S.C. §§ 5104B, 5108). As we noted above, section 5104B and section 5108 were added by the AMA as new procedural options for AMA claimants. *See* Pub. L. 115–55, sec. 2(g)(1), 131 Stat. at 1107; sec. 2(i)(1), 131 Stat. at 1109.

[65] *See Loyd v. Collins*, 38 Vet.App. 234, 249 (2025) ("Congress made clear that using a supplemental claim to continuously pursue a claim was *an AMA creation* to preserve an earlier effective date.") (emphasis added), *appeal docketed*, No. 25-1957 (Fed. Cir. July 23, 2025).

[66] *See, e.g., Cooper*, 38 Vet.App. at 5 (describing the "linear path" that a legacy claimant had to follow).

[67] For another indication that Congress made the supplemental claim available only to claimants whose claims streams were already under the AMA, *see* Pub. L. No. 115-55, sec. 5(3), 131 Stat. at 1126. Congress directed the Secretary to periodically publish various metrics on how appeals under the AMA were being processed. In particular, Congress told the Secretary to report on legacy claims that opt in to the AMA, to include "the average period required to adjudicate such legacy claims on average *after opting in*—(i) with respect to claims at a regional office . . . disaggregated by—(I) supplemental claims . . . [and] (II) requests for higher-level review." Pub. L. No. 115-55, sec. 5(3)(C), 131 Stat. at 1127 (emphasis added). What this provision tells us is that Congress understood that a supplemental claim was available *after* the legacy claimant opted in. And Congress *didn't* require VA to provide metrics on any other means of opting in, such as the number of legacy claimants who use a supplemental claim to opt in to the AMA. If Congress intended the supplemental claim to be used this way, it's odd that Congress said nothing about it in its metrics reporting requirement. Congress's silence on this point underscores our interpretation that Congress didn't intend for the supplemental claim to be an implicit opt-in mechanism.

[68] *See, e.g., Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018) (noting that courts should avoid absurd results when interpreting a statute); *see also Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (applying "the canon that a statutory construction that causes absurd results is to be avoided if at all possible").

[69] *Mattox*, 34 Vet.App. at 69; *see* 38 C.F.R. § 3.2400(a), (b) (2026).

12

pursued, the effective date is considered the date of the "initial application for a benefit."[70] Now let's consider appellant's view. Appellant argues that section 2(x) of the AMA states simply that the AMA applies to "*all* claims for which notice of a decision" is provided on or after February 19, 2019.[71] So essentially he asserts that a legacy claimant can file a supplemental claim within a year of an adverse legacy decision, get a new "initial decision" on that claim under the AMA, then access the AMA's continuous pursuit provisions.[72] But here's the problem with appellant's argument: He maintains that under continuous pursuit rules, the effective date stays anchored to the "initial application for a benefit" under legacy. So, in appellant's view, the initial *decision* under legacy can be replaced by a later AMA decision, but the initial *application* under legacy isn't replaced by the "new" initial application under the AMA (i.e., the supplemental claim). The inconsistencies are glaring, and we see no logic to the argument that the "initial decision" can be replaced or can change within a claim stream. We understand the "initial decision" to mean exactly that: the first decision on a particular claim that led to the administrative appeal.[73] Naturally, this means that a claim stream can't have more than one "initial decision." If the initial decision is on or after February 19, 2019, the AMA applies; if not, legacy applies unless a legacy claimant opts in. And when a legacy claimant opts in, he has the option to continuously pursue the effective date of his "initial application," consistent with section 5110(a)(2).

Ultimately, appellant's position would require us to hold that a legacy claimant can divert his claim stream into the AMA by simply filing a supplemental claim. Such a claim would defy legacy finality rules, prescribed opt-in procedures, and Congress's design for concurrent appeal systems. Under this understanding of section 5110(a)(2), the legacy system effectively disappears. We reject interpreting the statute in such an illogical way.

Perhaps an analogy at this point will help clarify. Think of the legacy and AMA systems as two train tracks running parallel to each other. The "initial decision" determines which track a claimant starts out on. The tracks don't overlap except for very limited points where the legacy

---

[70] 38 U.S.C. § 5110(a)(2).

[71] Appellant's Br. at 6 (quoting Pub. Law. No. 115-55, sec. 2(x)(1), 131 Stat. at 1115 (emphasis added)).

[72] *See* Appellant's Br. at 7 ("Here, the AOJ issued notice of the 'initial decision' on Mr. Boehringer's April 2022 supplemental claim in August 2022.").

[73] "Initial" means "first." *Initial*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged .merriam-webster.com/unabridged/initial (last visited May 12, 2026); *see also Terry v. Principi*, 340 F.3d 1378, 1382-83 (Fed. Cir. 2003) ("In the absence of an express definition, we presume that Congress intended to give [statutory] words their ordinary meanings.").

track splits and the legacy claimant can switch over to the AMA track (i.e., when the claimant can opt in to the modernized system). And there might be several chances to switch tracks. But if a legacy claimant doesn't switch over to the AMA when a split comes, he's chosen to stay on the legacy track.[74] These tracks don't merge at the end.[75] When a legacy claimant has exhausted all administrative options available under the legacy system (or declined more review), he's reached the end of the line. In other words, the claim becomes final, and the track ends. Any future claim under the AMA starts a brand new AMA track—it doesn't reconnect to the legacy track.

So what happens if a legacy claimant (who hasn't opted in to the AMA) files a supplemental claim form within a year of a legacy Board decision? We view that claim as a new AMA claim that starts a new claim stream.[76] Any "initial decision" relates to that new AMA claim, not any previous final legacy claim. Even if the claimant has attempted to continuously pursue the claim in the legacy claim stream, he can't. His old legacy claim isn't contemplated under section 5110(a)(2) because the AMA doesn't apply to legacy claim streams (assuming the claimant didn't opt in to the AMA). The fact that he filed his new claim on a supplemental claim form doesn't grant him access to the legacy claim stream. He's on a new AMA track starting with the new AMA claim.

Appellant asserts that our interpretation of the law is inconsistent with *Held v. McDonough*.[77] In that case, we considered the meaning of the "initial decision . . . with respect to the case" for attorney fees under 38 U.S.C. § 5904(c)(1).[78] We decided that, in the CUE context, the "initial decision" referred to the original decision that the claimant challenged—not the later decision concluding that VA committed CUE.[79] Critically, we clarified that the "initial decision" that triggers agent or attorney fees under section 5904(c)(1) was different from an "initial decision"

---

[74] Different choices have different consequences, and we hold claimants to their choices. *See, e.g.*, *Loyd*, 38 Vet.App. at 236, 246-48; *Cox v. McDonough*, 34 Vet.App. 112, 113, 125-29 (2021), *aff'd*, No. 2021-2288, 2023 WL 1846117 (Fed. Cir. Feb. 9, 2023) (per curiam judgment).

[75] *See Mattox*, 34 Vet.App. at 68 ("Importantly, although Congress created a new adjudicatory system in the AMA, it did *not* eliminate the then-existing system . . . . This concurrent system of adjudication is a centerpiece of Congress's design . . . .").

[76] *See supra* section III.D for the proposition that filing a supplemental claim in this situation would start a new claim stream because a legacy claimant who hasn't opted in to the AMA can't use an AMA supplemental claim to continuously pursue a final legacy Board decision.

[77] *See* Appellant's Br. at 8; Appellant's Reply Br. at 7.

[78] *Held*, 37 Vet.App. at 32-33; *see also Jackson*, 37 Vet.App. at 286-87 (discussing *Held*).

[79] *Held*, 37 Vet.App. at 33.

14

that triggers application of the AMA.[80] So *Held* does little to support appellant's position because we aren't asked to consider which decision is the initial decision for purposes of attorney fees under section 5904(c)(1) when a claimant proves CUE in an earlier decision. And *Held* didn't deal with the AMA's continuous pursuit rules or supplemental claims.

To summarize this section, we hold that continuous pursuit by a supplemental claim under section 5110(a)(2)(D) is available only within an AMA claim stream. Section 5110(a)(2)(D) speaks to AMA Board decisions, not legacy Board decisions. So a legacy claimant who hasn't opted in to the AMA can't use a supplemental claim to continuously pursue an earlier effective date claim decided under legacy.

### E. Legacy Finality Rules

A last note on legacy finality before turning to the application of law to the facts. As discussed above, Congress intended for the legacy and AMA review systems to operate concurrently, meaning they don't overlap.[81] So the AMA didn't change legacy finality rules, and our reading of section 5110(a)(2)(D) adheres to that. Under the legacy system, when the Board denies a claim, there's only one option for further review: an appeal to this Court within 120 days.[82] That's the only way to challenge an unfavorable legacy Board decision while still preserving the effective date attached to the initial claim. If there isn't a Court appeal, then the Board decision becomes final. Apart from a few limited circumstances (e.g., CUE, Board reconsideration, or the Board's sua sponte correction), once an effective date decision becomes final under legacy, it's not subject to readjudication.[83] A claimant can't seek to reopen a final effective date determination by the Board.[84]

---

[80] *Held*, 37 Vet.App. at 38 ("An 'initial decision' under § 19.2 refers to the decision that triggers the application of the AMA, whereas the 'initial decision . . . with respect to the case' under section 5904(c)(1) refers to the decision that triggers an agent's (or attorney's) ability to charge fees for representation of a claimant.").

[81] *Mattox*, 34 Vet.App. at 68-69.

[82] 38 U.S.C. § 7266; *Calhoun*, 37 Vet.App. at 100 ("Finality was achieved under the legacy system when the time allotted for the next action in the appeal chain expired without action by the claimant or a claimant had exhausted their options for review by a higher tribunal.").

[83] *See Calhoun*, 37 Vet.App. at 100 (citing *Rudd,* 20 Vet.App. at 299-300; *DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006), *aff'd sub nom. Dicarlo v. Peake*, 280 F. App'x 988 (Fed. Cir. 2008)); *see also Leonard v. Nicholson*, 405 F.3d 1333, 1337 (Fed. Cir. 2005) (stating that a freestanding earlier effective date claim is prohibited under legacy because that would "vitiate the rule of finality"); *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) (holding that, because Congress provided certain exceptions to the rule of finality, it didn't intend to allow other exceptions), *superseded by statute on other grounds*, AMA, Pub. L. No. 115-55, 131 Stat. 1105, *as recognized in Kisor v. McDonough*, 995 F.3d 1316 (Fed. Cir. 2021).

[84] *Calhoun*, 37 Vet.App. at 100 (noting that a legacy claimant may not seek to reopen a final effective date

A legacy claimant who hasn't opted in to the AMA is bound by the pathway prescribed under the legacy system. On the other hand, under the AMA, a claimant can forestall the finality of an AMA Board decision by filing a supplemental claim within a year of that decision (among other options).[85] But as noted above, continuous pursuit through a supplemental claim is a feature available only under the AMA. Unless a legacy claimant has opted in to the AMA, legacy finality rules apply. To repeat: A legacy claimant can't use a supplemental claim to readjudicate a final effective date determination.

### IV. APPLICATION

Appellant's TDIU claim fell under the legacy review system, a fact that no one disputes.[86] Appellant also had multiple chances to opt in to the AMA throughout his appeal, yet he didn't. No one disputes this either.[87] In October 2021—still under legacy—the Board denied TDIU before February 2016. Appellant didn't appeal the Board's 2021 decision to the Court. Because he didn't pursue the legacy options for abating the finality of the October 2021 Board decision, that decision became final.[88] And because his claim stream was in legacy, he couldn't use a supplemental claim to preserve an earlier effective date claim or otherwise continue his legacy claim stream. As noted above, only a claimant whose claim stream is already in the AMA has the procedural option of continuous pursuit through a supplemental claim.

So when appellant filed his April 2022 claim for an earlier TDIU effective date, that began a *new* claim stream under the AMA. Although appellant filed his claim on a supplemental claim form (VA Form 20-0995, Decision Review Request: Supplemental Claim) and identified the October 2021 Board decision, this didn't transform his claim into a valid continuously pursued

---

determination).

[85] *See Calhoun*, 37 Vet.App. at 102 ("[T]he finality of an *AMA* benefits determination is forestalled when a claim is continuously pursued . . . . Accordingly, an *AMA* decision does not become final until the 1-year period after a decision by the AOJ, the Board, or the Court has expired without an action in accordance with section 5110(a)(2) . . . .") (emphasis added).

[86] *Compare* Appellant's Br. at 9, *and* Appellant's Reply Br. at 4, *with* Secretary's Br. at 6-7. Appellant filed a claim for PTSD in 2012, which VA decided later that year. R. at 6096-97. Appellant then filed a claim for TDIU based on his PTSD in 2013, which VA decided in June 2014. R. at 6007, 5944-46. Because TDIU cases are unique, we make no bright-line rule on what the initial decision is for TDIU purposes.

[87] *Compare* Appellant's Br. at 4, 9, *with* Secretary's Br. at 12.

[88] *See* 38 U.S.C. § 7266 (stating that an appellant must file a Notice of Appeal of a Board decision within 120 days).

16

supplemental claim.[89] So the August 2022 AOJ decision was an initial decision with respect to the April 2022 claim, not the November 2013 claim. The AMA's procedural pathways and tools were available beginning with the April 2022 claim. The legacy TDIU claim stream was extinguished, and appellant couldn't revive it.[90] His legacy and AMA claim streams remained separate.

In the October 2023 decision on appeal, the Board found that appellant couldn't continuously pursue an earlier effective date claim that was finally decided under the legacy review system.[91] Noting that continuous pursuit applied only to supplemental claims filed within a year of *AMA* decisions, the Board dismissed the appeal.[92] Appellant didn't opt in to the AMA, and he couldn't use a supplemental claim under section 5110(a)(2)(D) to bring his legacy claim stream into the AMA.[93] So we hold that appellant couldn't continuously pursue the earlier TDIU effective date claim that became final under legacy, and we affirm the Board's decision.

## V. CONCLUSION

For these reasons, the Court AFFIRMS the Board's October 27, 2023, decision dismissing a claim for an effective date earlier than February 25, 2016, for TDIU.

BARTLEY, *Senior Judge*, with whom TOTH and JAQUITH, *Judges*, join, dissenting: This matter was referred to the en banc Court to address whether Mr. Boehringer's appeal was correctly dismissed after he filed an AMA supplemental claim within 1 year of receiving a legacy Board decision that denied him an earlier effective date of benefits. Because the AMA public law and

---

[89] We also recognize that the AOJ considered the merits of his earlier effective date claim in August 2022. Instead, the AOJ should've recognized that the claim was a freestanding earlier effective date claim and dismissed it. The fact that the AOJ failed to catch this also didn't open the door to the AMA, and the 2021 Board decision remained final under legacy.

[90] This is true unless, of course, appellant moves for revision based on CUE, the Board grants reconsideration, or the Board sua sponte corrects obvious error. *See Calhoun*, 37 Vet.App. at 100.

[91] R. at 8.

[92] R. at 7-8 (finding that appellant's April 2022 submission amounted to an impermissible freestanding claim for an earlier effective date).

[93] We don't address today whether the AMA necessarily prohibits a claimant from *filing* a "freestanding" supplemental claim requesting an earlier effective date and starting a new AMA claim stream. In other words, our decision doesn't answer whether VA should address the merits of such a claim rather than dismiss the claim. Even assuming that the Board should've denied appellant's April 2022 effective date claim on the merits, the Board's error is harmless because appellant can't use a supplemental claim to get an earlier effective date based on his initial legacy claim.

associated amendments to section 5110(a) allow Mr. Boehringer to receive all beneficial AMA process, including AMA effective date rules and a Board merits decision on his appeal, we respectfully dissent.

Mr. Boehringer filed his supplemental claim after the AMA effective date and within 1 year of his October 2021 Board decision. The plain language of section 5110(a)(2)(D), a provision included in AMA public law number 115-55, is clear: A claimant who files a supplemental claim within 1 year of the date on which "the Board of Veterans' Appeals issues *a* decision" continuously pursues their claim. Absent any indication that section 5110(a)(2)(D) refers only to an AMA Board decision, we cannot assume, as the majority does, that the indefinite article "a" refers exclusively to an AMA Board decision and excludes a legacy Board decision.

The majority acknowledges that statutory text doesn't explicitly require the Board decision to have been issued in the AMA system, *ante* at 8, but dispenses with clear public law and statutory directives to instead rely on unsupported assumptions about context to reach their conclusion. But courts have long looked askance at context-based arguments that add limiting words not included in the statutory text. *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) (declaring that courts "cannot[ ] add provisions to a federal statute"); *Bates v. United States*, 522 U.S. 23, 29 (1997) (advising courts to "ordinarily resist reading words or elements into a statute that do not appear on its face"); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (same). Plain meaning is conclusive "except in the rare cases" in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (internal quotations omitted). And here, the majority fails to show that the literal application of section 5110(a)(2)(D) to veterans like Mr. Boehringer would be absurd or at odds with Congress's intent.

Their ruling not only disregards the plain language of section 5110(a)(2)(D), it also ignores or misinterprets the plain language of the "applicability" provisions of the AMA found in section 2(x) of the AMA public law. *Ante* at 10-15. Subsection 2(x)(1) states that "[e]xcept as otherwise provided in this subsection, the [AMA] amendments made by this section shall apply to all claims for which notice of a decision under section 5104 . . . is provided by the Secretary of Veterans Affairs" on or after February 19, 2019.[94] 38 U.S.C. § 101 note; Pub. L. No. 115-55, sec. 2(x)(1),

---

[94] The effective date specified in the statute was the later of two possible dates. 38 U.S.C. § 101 note. It is undisputed that February 19, 2019, is the effective date of the AMA.

18

131 Stat. at 1115.[95] Although the majority finds that this provision is not applicable to Mr. Boehringer, he clearly meets the requirement of subsection 2(x)(1), having received section 5104 notice in August 2022, following the filing of his April 2022 supplemental claim.

Our colleague Judges assert that the "except as otherwise provided" language of subsection 2(x)(1), in combination with subsection 2(x)(5), dooms Mr. Boehringer's argument. Subsection 2(x)(5), "Treatment of Legacy Claims," provides that a claimant pursuing a legacy appeal before the agency "may elect to participate in the new appeals system" mid-claim-stream—namely, upon issuance of an SOC or SSOC. Pub. L. No. 115-55, sec. 2(x)(5), 131 Stat. at 1115; *see* 38 U.S.C. § 101 note. The majority concludes that claimants who did not choose to elect under subsection 2(x)(5), and who subsequently receive their legacy Board decision, are not covered by section 5110(a)(2)(D) even if they meet its requirements by filing a supplemental claim within 1 year of "*a* Board decision." *Ante* at 9-10, 13-16. The majority states:

> So what happens if a legacy claimant (who hasn't opted in to the AMA) files a supplemental claim form within a year of a legacy Board decision? We view that claim as a new AMA claim that starts a new claim stream. Any "initial decision" relates to that new AMA claim, not any previous final legacy claim. Even if the claimant has attempted to continuously pursue the claim in the legacy claim stream, he can't. His old legacy claim isn't contemplated under section 5110(a)(2) because the AMA doesn't apply to legacy claim streams.

*Ante* at 14 (footnotes omitted).

The majority does not cite authority for this view, *id.*, because not only is their reading contrary to the statute's (including the statutory note's) plain language, there is no indication in legislative history or legislative or statutory context that the election option laid out in subsection 2(x)(5) is the sole way for a claimant in the legacy system at AMA enactment (which included the vast majority of VA claimants in existence at that time) to access the beneficial processes of the AMA, including modernized review options and continuous pursuit, for their claims.[96] As noted, statutory language provides that after February 19, 2019, subsection 2(x)(1) of the public law and section 5110(a)(2)(D) apply to a claimant who files a supplemental claim within 1 year of receiving

---

[95] Subsection 2(x)(1) was added as a note to section 101 when AMA Public Law 115-55 was enacted. Statutory notes have the same force of law as statutes themselves. *Cameron v. McDonough,* 1 F.4th 992, 995 (Fed. Cir. 2021) (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993)).

[96] We agree with the parties, as well as with the majority, that a claimant who received notice of a decision *before* February 19, 2019, and who so elected under subsection 2(x)(3), became subject to the AMA prior to its effective date. This program was called the Rapid Appeals Modernization Program.

19

"a" Board decision. Thus, the statute provided more than one way for claimants like Mr. Boehringer to proceed once the AMA was enacted, including subsection (x)(1) and subsection (x)(5). There is no support for finding that a claimant who completes the legacy process without electing under subsection 2(x)(5), and who then files an AMA supplemental claim, as Mr. Boehringer did, is to be deprived of the important advantages of the AMA system.

In fact, subsection 2(x)(5), which allows a legacy system claimant to elect the AMA system mid-claim-stream, at the point of having received an SOC or SSOC, is not relevant to Mr. Boehringer's case. Once Mr. Boehringer filed a supplemental claim in April 2022 and received a post-February 2019 notice of decision, he was not in the legacy system or continuing his legacy appeal, and we see no conflict between subsection 2(x)(5) and the plain language of amended section 5110 as applied to his case. This is the crux of our disagreement with our colleagues: We see the law as clearly providing that an AMA supplemental claim filed within 1 year after issuance of a final Board decision (any final Board decision) and with subsequent receipt of 5104 notice of decision issued on or after February 19, 2019, as an AMA supplemental claim subject to the AMA. It is not the continuation of a legacy appeal, as that view utterly lacks statutory support.

And, in any event, subsection 2(x)(5) is not an "exception" to subsection 2(x)(1). "Exception" is defined as "exclusion" and "one that is excepted[;] a case to which a rule does not apply."[97] Subsection 2(x)(5) does not purport to "except" veterans from 2(x)(1)'s general rule that claimants who receive section 5104 notice on or after February 19, 2019, are automatically in the AMA system. Instead, making no mention of 5104 notice or February 19, 2019, subsection 2(x)(5) offers entry into the AMA system to legacy claimants who already received (legacy) notice under the old section 5104 and who are at the point of receiving a legacy SOC or SSOC. The fact that subsection 2(x)(5) does not qualify as an exception provides an additional basis for us to reject the majority's analysis.

And although our view is not grounded on a notice failure, we observe that the VA notices to Mr. Boehringer that he could elect the AMA system in the middle of his legacy claim stream did not apprise him, or the thousands of others who received this same notice, of any downside to remaining in legacy—let alone such a significant downside as the majority here creates, that of

---

[97] *Exception*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/exception (last visited June 22, 2026). Subsection 2(x)(3), which allowed for "early applicability" of the AMA "before the applicability date" of February 19, 2019, cleanly fits the definition of an exception to subsection 2(x)(1)'s general rule that the AMA applies to all claims for which notice is provided on or after February 19, 2019.

potentially losing years and years of benefits. R. at 3829-30, 3529-30, 2780-82. The AMA fact sheets that Mr. Boehringer received advised that "[t]he new law allows appellants with a legacy appeal an opportunity to withdraw from the legacy appeals process and enter the modernized appeals system." R. at 2781, 3829; *see* R. at 3529. These communications described the benefits of electing into AMA as "[a] new, more efficient review process," "[p]otentially faster decisions and early resolution of disagreements," "[m]ultiple review options," and "[t]he same potential effective date for your benefits regardless of the [AMA] review option that you choose." R. at 2781, 3829; *see* R. at 3529. The fact sheets also stated: "If you choose not to participate in in [sic] the modernized appeals system, you do not need to take any action as it relates to opting-in. Your appeal(s) will remain in the legacy appeals process." R. at 2782, 3830. The notices contained no indication whatsoever that claimants who did not elect AMA at that point would be disallowed full entry into the AMA system, including its benefits and processes, once the legacy process was complete.

The majority characterizes the filing of a supplemental claim as an unintended opt-in mechanism not contemplated by Congress, *ante* at 9, and contends that if Mr. Boehringer's arguments were to succeed, the legacy system would disappear automatically every time VA issued a legacy decision after February 19, 2019, *ante* at 13. But since enactment of the AMA removed for all future claims the legacy statute that permitted reopening of legacy claims, 38 U.S.C. § 5108 (2018), replacing it with the supplemental claim process that Mr. Boehringer here rightfully used, it appears inescapable that eventually no claims will be in the legacy system. *See* Pub. L. No. 115-55, sec. 2(x), 131 Stat. at 1115; 38 C.F.R. § 19.2(a) (2026); *see also* VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (final rule) (codified at 38 C.F.R. pts. 3, 8, 14, 19, 20, 21). But that said, if claimants decide to remain in the legacy system when given the choice to elect into the AMA mid-claim-stream, they are able to do so and will be unaffected by our view of the proper disposition of Mr. Boehringer's appeal. And our adherence to the plain language of the statutory text, including the statutory note concerning the applicability of the AMA, is in no way contrary to prior holdings of the Federal Circuit or this Court, *ante* at 8-15, as those cases did not purport to decide the issue addressed here.

In conclusion and for the foregoing reasons, the Court should reverse the Board's October 2023 dismissal of Mr. Boehringer's appeal and remand that matter for readjudication, including a

21

decision as to the date of his initial claim for purposes of establishing the proper effective date under section 5110(a)(2). Because the majority does not do so, we respectfully dissent.

22